The TORO COMPANY, Plaintiff–Appellant,

v.

WHITE CONSOLIDATED INDUSTRIES, INC. and WCI Outdoor Products, Inc., Defendants–Appellees.

No. 00–1561.

United States Court of Appeals, Federal Circuit.

Sept. 24, 2001.

Rehearing and Rehearing En Banc Denied Nov. 1, 2001.

Earl D. Reiland, Merchant & Gould P.C., of Minneapolis, MN, argued for plaintiff-appellant. With him on the brief were David K. Tellekson, and Timothy A. Lindquist.

William McGuiness, Fried, Frank, Harris, Shriver & Jacobson, of New York, NY, argued for defendants-appellees. With him on the brief were Pauline L. Wen and Rita M. Odin.

Before NEWMAN, RADER, and LINN, Circuit Judges.

RADER, Circuit Judge.

On remand from this court, the United States District Court for the District of Minnesota granted summary judgment that White Consolidated Industries, Inc. does not infringe The Toro Company's United States Patent No. 4,694,528 (the '528 patent) under the doctrine of equivalents (DOE). Because the district court's summary judgment was improper, this court vacates the judgment and remands for trial.

## I.

Toro owns the '528 patent which discloses and claims a "convertible vacuum-blower." Vacuum-blowers are handheld machines used to vacuum leaves and small debris, or to disperse the same in the blower mode. As described in detail in this court's previous opinion, the '528 patent discloses a vacuum-blower design with a removable cover to which is attached a restriction ring. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1297–1298, 53 USPQ2d 1065, 1066–67 (Fed.Cir.1999) (*Toro I*). When placed over the air inlet, the restriction ring reduces the diameter of the air intake opening and increases the power of the blower. Because the ring

can be easily removed, the machine's design does not impede its vacuuming ability. Claim 16 of the '528 patent recites:

16. A convertible vacuum-blower comprising:

[1] a housing having an air inlet and an air outlet;

[2] a motor supported in said housing;

[3] an impeller having a plurality of impeller blades supported for rotary motion in said housing, in fluid communication with said air inlet and said air outlet, and rotatably driven by said motor;

[4] *a removable air inlet cover for covering said air inlet, said air inlet cover having apertures for passage of air through the cover;*

[5] attachment means for removably securing said air inlet cover to said housing; and

[6] *said cover including means for increasing the pressure developed by said vacuum-blower during operation as a blower when air is being supplied to said impeller through said apertured cover.*

(Emphasis added.)

In 1998, Toro filed suit against White alleging infringement of claims 16 and 17 of the '528 patent. The district court construed claims 16 and 17 and granted Toro's motion for summary judgment holding that White literally infringed these claims. On appeal, this court interpreted the claim. This court construed clause [6] of claim 16 to mean that the restriction ring, or "means for increasing the pressure," is "permanently affixed to and included as part of the cover." *Toro I*, 199 F.3d at 1302. Because White's accused vacuum-blower has a restriction ring that is separate from the cover, this court reversed the district court's summary judgment of literal infringement. This court remanded the case to the district court for a determi-

nation of infringement under the doctrine of equivalents, stating: "The court did not reach the question of whether the use of separate components for cover and ring would nonetheless infringe under the doctrine of equivalents. On this factual question of equivalency, material facts were in dispute." *Id.*

On remand, the district court interpreted *Toro I* as holding that "a critical function of the air inlet cover claimed in the '528 patent is to automatically insert and remove the restriction ring." *Toro Co. v. White Consol. Indus.*, Civil No. 4–95–656, slip op. at 9 (D.Minn. Aug.9, 2000) (*Toro II*). The air inlet cover of White's accused vacuum-blower is not attached to the restriction ring and, thus, does not automatically place the ring. The district court, therefore, granted summary judgment that White's accused vacuum-blowers do not infringe the '528 patent under the doctrine of equivalents. The district court further determined that this court's statement that material facts regarding equivalency were in dispute was merely dicta and that this court's remand instruction was "merely [ ] a shorthand signal that the issue of equivalency was not yet ripe for appellate adjudication." *Toro II*, slip op. at 13. Toro appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.

 This court reviews without deference a district court's grant of summary judgment and draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1355, 53 USPQ2d 1734, 1736 (Fed.Cir.2000). "Infringement under the doctrine of equivalents requires an intensely factual inquiry." *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d

1377, 1381, 54 USPQ2d 1841, 1844 (Fed. Cir.2000). Thus, this court will only affirm the district court's grant of summary judgment if the record contains no genuine issue of material fact and leaves no room for a reasonable jury to find equivalence. *Id.*

■ To infringe a claim under the doctrine of equivalents, an accused device must include an equivalent for each literally absent claim limitation. *Dawn Equip. Co. v. Kentucky Farms,* 140 F.3d 1009, 1015, 46 USPQ2d 1109, 1113 (Fed.Cir. 1998). To determine whether the accused device includes equivalents for a claim limitation, this court applies the "insubstantial differences" test. *Id.* As the Supreme Court noted: "[T]he insubstantial differences test offers little additional guidance as to what might render any given difference 'insubstantial.'" *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997). However, the Supreme Court has also explained:

> [C]ourts have [ ] recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make *unimportant and insubstantial changes* and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law.

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328, 330, (1950) (emphasis added).

In some cases, the change in the accused device is so facially "unimportant and insubstantial" that little additional guidance is needed for a fact finder to determine whether an accused device includes an equivalent of a claim limitation. For example, if an accused infringer has simply separated into two components what the patentee has claimed as one component, a fact finder might indeed find such a change "insubstantial." *Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 398, 29 USPQ2d 1767, 1770 (Fed.Cir.1994) ("An accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention." (citing *Intel Corp. v. Int'l Trade Comm'n,* 946 F.2d 821, 832, 20 USPQ2d 1161, 1171 (Fed.Cir.1991))); *see also Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1239–1240, 9 USPQ2d 1913, 1923 (Fed.Cir.1989). In the present case, the determination of whether White's two-piece ring and cover is insubstantially different from the unitary ring and cover claimed by the '528 patent is a material issue of fact. With a fuller understanding of the technology, a reasonable jury could find that White's two-piece cover is an equivalent to the claimed unitary ring and cover.

■ In appropriate cases the function-way-result test offers additional guidance on the question of equivalence. *Dawn Equip.,* 140 F.3d at 1015. Under this test, the fact finder determines whether the element in the accused device "does substantially the same thing in substantially the same way to get substantially the same result" as the claim limitation. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1260, 9 USPQ2d 1962, 1969 (Fed.Cir.1989) (quoting *Tektronix, Inc. v. United States,* 195 Ct.Cl. 53, 445 F.2d 323, 329 (1971)). The district court focused on the function-way-result test in summarily determining that the cover of White's accused vacuum-blower is not an equivalent of the claimed cover because

White's cover does not perform the function of automatically placing the restriction ring.

■ Clause [4] of claim 16 recites the objective of the cover as covering the air inlet of the vacuum-blower (to keep fingers and clothes from entering the impeller) and permitting the passage of air through the cover to the inlet. The written description of the '528 patent explains that the unitary cover and ring design "is also advantageous in that it automatically restricts the size of air inlet 26 depending upon which operation is being conducted without having the operator manually insert or remove a replaceable ring." Col. 7, II. 6–12. In *Toro I*, this court used this description, along with the figures in the specification, to help enlighten the meaning of "said cover including [a restriction ring]." This court concluded that "the restriction ring is 'part of' the cover, in permanent attachment." *Toro I*, 199 F.3d at 1301. This court's claim construction, however, did not and could not import into the claim a function from the specification, particularly when the claim recites only purely structural limitations. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433, 7 USPQ2d 1129, 1131 (Fed.Cir.1988) (holding that it is improper to import an extraneous limitation from the specification into a claim). An invention claimed in purely structural terms generally resists functional limitation. *Ecolab v. Envirochem*, 264 F.3d 1358, 1367 (Fed.Cir. 2001) ("Where the function is not recited in the claim itself by the patentee, we do not import such a limitation."); *Jeneric/Pentron Inc. v. Dillon Co.*, 205 F.3d 1377, 1382, 54 USPQ2d 1086, 1090 (Fed.Cir.2000); *Transmatic, Inc. v. Gulton Indus.*, 53 F.3d 1270, 1278, 35 USPQ2d 1035, 1041 (Fed.Cir.1995) (holding that the district court erred by importing functional limitations into a

structural claim element because functions that are not recited in a claim are not legally relevant to the literal language of the claim).

In this case, the structural limitation was a unitary cover and ring. The primary function or objective of the cover, as described in the specification and recited in claim 16, is to cover the air inlet of the vacuum-blower (to keep fingers and clothes from entering the impeller) and permit the passage of air. While this structure could have a variety of other functions (as is often the case with structures), including supporting surrounding structures, attaching related parts, and so forth, these functions do not become part of the claimed structure unless claimed as such. The function of automatic placement of the ring in the claimed unitary cover and ring is inherent in that structure, much as supporting surrounding structures are inherent in a structural limitation. In fact, Toro's expert, Mr. Fitz-Gibbon, testified that automatic placement is inherent in this unitary structure.

In *Vehicular*, this court specifically addressed a similar question. In that case, this court explained: "[A]n accused device could conceivably lack an insignificant function of a single claim limitation and still be only insubstantially different than the claimed invention." *Vehicular*, 212 F.3d at 1380. This court upheld the district court's summary judgment of noninfringement under the doctrine of equivalents in that case because the accused device lacked a key objective of the invention. *Id.* at 1382. Likewise, in *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1255–56, 53 USPQ2d 1984, 1991–92 (Fed.Cir.2000), a reissue application of the patent at issue recited as essential an objective of the invention not provided by the structure of the accused device. Giving deference to the ten-day bench trial of the district court,

this court held that the "trial court was entitled to accord little weight" to Speedplay's "litigation-induced pronouncements" that the objective at issue was not critical and was simply inherent. *Id.* at 1256.

Neither the '528 patent's specification nor this court's claim interpretation, however, make the inherent function of automatic placement a key objective of this invention. Rather, the specification mentions in passing the automatic placement feature among other functions of the cover. Thus, on this record, a genuine issue of material fact remains as to whether White's vacuum-blower cover performs substantially the same overall function as the cover claimed by the '528 patent. In light of the understanding enunciated by this court that automatic placement is a non-critical inherent function of the claimed cover, a reasonable jury could find White's two-piece structure equivalent to the one-piece structure recited in the asserted claims.

## CONCLUSION

The district court improperly granted summary judgment that White's vacuum-blower does not infringe claims 16 and 17 of the '528 patent under the doctrine of equivalents.

## COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*